[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DATE OF SENTENCE 2-28-96 DATE OF APPLICATION 3-26-97 DATE APPLICATION FILED 3-27-97 DATE OF DECISION 5-14-01
Application for review of the sentenced imposed by the Superior Court, judicial district of Hartford,
Docket #CR93-448783
RICHARD CRAMER For the Petitioner
VICTOR CARLUCCI For the State of Connecticut CT Page 10866
By the Division:
The petitioner seeks reduction of a sixty year sentence imposed after his conviction by a jury for Accessory to Murder C.G.S. § 53a-54a and53a-8, and Conspiracy to Commit Murder C.G.S. § 53a-48 and 53a-54a.
The facts that support this sentence are summarized in State v. Ortiz,47 Conn. App. 333, 335-337 (1997):
On November 8, 1993, at approximately 8 p.m., Arnette Harrison was riding his bicycle on Retreat Avenue in Hartford when he noticed Angel Ortiz walking toward him. Harrison saw a man run from behind Angel and shoot him. As the man began to shoot at Angel, Harrison fell off his bicycle and hid behind a car and watched the shooter, afraid that he would be shot next. The shooter looked directly at Harrison and then ran up the street and entered the passenger side of a truck. The truck proceeded down the street slowly toward Harrison, who continued hiding behind the car and watching the truck. When the truck reached the spot where Harrison hid, the driver looked directly at Harrison. Harrison recognized the driver as a man by the name of Carlos Ortiz, the defendant, whom he had seen before on a few occasions. After the truck passed, Harrison stepped into the street to attempt to see the license plate number. Harrison further testified that the area was well lit and that, when the truck drove past, he was fifteen to twenty feet away. At trial, Harrison identified the defendant as the driver of the truck. Harrison was able to observe that the truck was a red, orange, or brown Subaru-type truck, with a white stripe down the side and a rust spot on the driver's side behind the door. He noted that the license number was "WC, WE, NC or NE, something like that, and four numbers."
At approximately 8:05 p.m., police arrived at the scene and within minutes broadcast a description of the truck and the direction of travel it was last seen headed. The victim was rushed to the hospital, where he was pronounced dead as the result of gunshot wounds to the chest and arm.
Within minutes of the broadcast, the police located a small red pickup truck with an orange stripe in the nearby Dutch Point housing project. The responding officers followed the truck as it proceeded in the wrong CT Page 10867 direction on a one-way street and blocked it with their cruiser after it backed into a parking space. Following standard operating procedures when a vehicle is suspected of being involved in a felony and the possibility of confrontation exists, the officers took up positions behind the open doors of their cruiser and ordered the two men out of the truck. The officers did not draw their weapons. The two occupants exited the car. Again, following standard procedure, the officers ordered the men to lean spread-eagle over the hood of the truck and conducted a pat-down search of the passenger, later identified as the defendant, and the driver, later identified as Marcus Maldonado. The officers also conducted a protective search of the truck. Neither the search of the suspects nor that of the truck revealed any weapons. The license plate of the truck was NC5808. No description of the license number or identification of the occupants was made during the broadcast.
Approximately twenty-five minutes after the shooting, the police brought Harrison and three other witnesses to Dutch Point to view the truck. All four men identified the truck as the vehicle involved in the shooting. Harrison identified the defendant as the driver, and Maldonado as the shooter. Another witness who had seen the shooting, Marcus Henry, identified Maldonado, on the basis of his clothing, as the shooter. Following those identifications, Maldonado and the defendant were arrested.
A search of the area failed to locate the murder weapon. Atomic absorption tests performed on the defendant and Maldonado revealed the presence of elements characteristic of gunshot residue. Maldonado's shirt and coat cuffs, and the thigh area of his pants all tested positive for gunshot residue. Atomic absorption tests performed on the outside door handle, inside door handle, seat, dashboard area, window crank, molding, and armrest on the passenger side of the truck revealed elements characteristic of gunshot residue.
The defendant told the police that he had been a passenger in a truck with Maldonado when it was stopped at Dutch Point. The defendant also stated that, shortly before they were stopped, he had gone to Retreat Avenue to ask his mother for money.
The petitioner directs the Division's attention to the sentence given to Maldonado. Maldonado engaged in plea bargaining and received an agreed upon sentence of 25 years for Murder and Conspiracy to Commit Murder. The petitioner cited the 35 year difference between his sentence and that of the actual murderer as evidence of the inappropriate and disproportionate nature of his penalty. Additionally, the petitioner indicated that most of his previous record involved stealing cars. The petitioner contends that his record was non-violent and in large part due to psychiatric and CT Page 10868 drug abuse problems. He now regrets his involvement and accepts his responsibility.
The State opposed any reduction in the petitioner's sentence. The State noted the petitioner's lack of remorse at sentencing, his gang affiliation, his continued problems while incarcerated and his extensive record prior to his conviction for this offense.
The prosecutor's remarks at sentence were accurate and appropriate. The sentencing judge noted the petitioner's past criminal history, his lack of remorse and the slight chance of successful rehabilitation. The sentence imposed, however, in light of all the facts known at the time of sentencing does not support a sentence for an accessory that is more than double that received by the principal. The shooter received the minimum, the driver received the maximum; the difference between the prior records of the two does not justify this disparity.
Although the Division finds that the sentence should be reduced, it still views the petitioner as deserving of a sentence which appropriately deals with the crimes he committed, the criminal record he possesses, the continued threat he presents to society and legitimate goals of society in dealing with crimes of violence.
The petitioner's sentence is reduced to 45 years to serve on the Accessory to Murder. The petitioner's sentence of 20 years on the Conspiracy to Commit Murder stands as imposed, both sentences are concurrent with each other for an effective sentence of 45 years to serve.
Judges O'Keefe, Iannotti and Klaczak participated in this decision.